MATHILDA SOPHIA SCHMIDT

*v.*

EDWARD H. SCHMIDT, as executor of William H. Schmidt, deceased, et al.

EDWARD H. SCHMIDT, executor, &c.,

*v.*

MATHILDA SOPHIA SCHMIDT et al.

[Decided September 10th, 1912.]

1. Where a testator gave his wife and unmarried daughters the use of his residence, together with the total income of his estate after deducting taxes, the total income in view of the deduction of taxes meant the "gross income," which is the entire amount that the use of the principal yields, as contradistinguished from "net income," which means what is left of gross income after all expenses on behalf of upkeep are deducted.

2. Where a testator bequeathed unto his wife for life the total income of his estate after deducting taxes, special assessments for sewer improvements equaling about five years' income are not to be deducted as taxes; the word "taxes" ordinarily meaning the annual amounts levied upon persons or property for governmental purposes, and not special assessments for benefits of public improvements.

3. Where a testator bequeathed the income of his estate to his wife and unmarried daughters during the life of the widow, a daughter single at the time of the execution of the will, but covert at the time of the death of the testator, is not entitled to share in the income; the will speaking from the testator's death.

4. Where a testator devised the total income of his estate unto his wife and unmarried daughters during the life of the widow, and only one daughter was unmarried at the time of the testator's death, the income must be equally divided.

Heard on bills, answers, replications and proofs in open court.

These two suits were consolidated. The object of the one first above stated was to obtain an accounting from the executor at the behest of a legatee. The object of the second one was to obtain a construction of the will of the decedent and to obtain instructions and directions in the matter of the settlement. The account which the executor filed in the orphans court of Hudson county was brought over into this court, and exceptions thereto were filed by the legatee in question, Mathilda Sophia Schmidt, the complainant in the first suit, and one of the defendants in the second.

This hearing is to dispose of all the issues raised in such suits.

Certain facts have to be stated so that the decision may be understood.

William E. Schmidt, whose estate is the one concerned in these suits, died on the 4th day of March, 1908, at West New York, in this state. He left him surviving his widow, Sophia (about eighty years old), a son William C., a son Edward H., a daughter Ida (married to one Kraft), and a daughter Mathilda Sophia, unmarried. He left a will which has been probated and in which his son Edward H. Schmidt is named as executor.

*Messrs. Abel I. Smith & Mabon,* for Mathilda Sophia Schmidt.

*Mr. Marshall Van.Winkle,* for Edward H. Schmidt, executor.

*Mr. Francis V. Many,* for Ida Kraft.

GARRISON, V. C. (after making above statement).

I shall take up and dispose of the various questions under the heads that they have been dealt with by counsel.

*First.* The proper construction of the will. It reads as follows:

"I, William H. Schmidt of West New York, County of Hudson and State of New Jersey, aged sixty-two years, do make, ordain, publish and declare this to be my last will and testament, that is to say:

"*First.* After all my lawful debts are paid I give to my wife Sophia and our unmarried daughters, the use and occupation of my residence with all furniture contained therein also horses & Carriages with the total income from my estate, stocks, bonds & Mortgages and notes after deducting taxes.

"After the death of my wife the estate is to be divided into four equal shares. 1 share each to my son Wm. C. & E. H. and my daughters Mathilda & Ida Schmidt and the said share of my daughters shall be for their benefit exclusively in case of their marriage.

"I make, constitute and appoint my son Edward H. Schmidt to be executor of this my last will and testament, hereby revoking all former wills by me made with full power to sell any or all my estate and invest the money on interest if in his judgment it will appear of interest to the estate, except residence which only can be signed of before death of my wife with her consent.

"In witness whereof, I have hereunto subscribed my name and affixed my seal the twenty-fourth day of June in the year of our Lord one thousand eight hundred and Ninety-six.

                "WM. H. SCHMIDT.   (SEAL.)

"The foregoing written and printed instrument consisting of two sheets was subscribed by the said Wm. H. Schmidt in our presence and by him then and there acknowledged to each of us that he had executed the same, and he at the same time declared the said instrument so subscribed by him to be his last will and testament; and we at his request, have signed, our names as witnesses hereto, in his presence and in the presence of each other, and have so signed our names as witnesses on each sheet herein and written opposite our names our respective places of residence.

"FREDERICK N. KRAFT, residing at Brooklyn. N. Y.
"JOHN HIRSCH, residing at Brooklyn, N. Y.

### CODICIL.

"I, Wm. H. Schmidt, now aged seventy years of the Town of West New York, N. J., do this thwentieth day of December nineteen hundred and four make and publish this codicil to my last will and testament, made the fourth day, of June eighteen hundred and ninety-six, that is to say, whereas since making my last will & testament I have converted a considerable portion of my real & personal property to establish with

my dutyfull son Edward H. Schmidt an ice manufactoring plant of which he holds two fifths and I three fifths. I do hereby give and devise to my son Edward H. Schmidt my three-fifths parts in said plant together with an additional half an acre of land ajoining said plant and plot of land on which the factory is situated to the west in all other parts my said will & testament is hereby ratified and confirmed and this is done without any knowledge or influence of my' said son E. H. Schmidt.

"Signed, published and declared by the said W. H. Schmidt to be a ·codicil to his last will & testament in the presence of us who were present at the same time and subscribed our names as witnesses in his presence.

"HENRY F. BRANDIS, 4854 Hudson Boulevard. (L. S.).

"WM. H. SCHMIDT. (L. S.).

"JACQUES DIEHL, 685 Jefferson Str. (L. S.)."

The question debated by counsel was whether this will should be so construed as to give to the widow and unmarried daughters all the income from the estate after deducting from such income the taxes, or whether, in addition to deducting the taxes, all other necessary expenditures should be also deducted from the income before the widow and unmarried daughters should get the same. In this case, as in all cases of the proper construction of a will, the first thing which must be determined is whether there has been by law a certain fixed meaning ascribed to certain language. If there has been, then the court's duty is simply to so declare. If, however, the court fails to find that authority and precedent have ascribed a definite meaning which must be ascribed to the language under consideration, then it becomes the duty of the court to ascertain what the testator intended by the language he used, and to do that which will carry out such intention unless it be opposed to some positive rule of law.

Where the law has not determined and fixed the meaning to be ascribed to the language used, opinions in other cases are of little, if any, use, because such "will" must be read and interpreted in the light of what appears therein and of the individual circumstances of that particular case.

What courts, lexicographers and others who have studied the language have said about the meaning properly and usually to be ascribed to any word or collocation of words is, of course, of benefit with respect to the identical word or collocation under consideration in any specific case, but only, so to say, as side

lights with respect to the direct illumination cast thereon by the intention disclosed by the whole will and the circumstances under which it was written.

The will in .question was written by the testator himself. At the time, he wrote it, in 1896, he was sixty-two years of age. His family consisted of his wife and two unmarried daughters and two sons. His scheme, as described by the will, undoubtedly was to preserve, during the widow's lifetime, the homestead and its accessories, furniture, horses and carriages and the like for the widow and the unmarried daughters, and to give them the means to live as they had been accustomed to live therein. In expressing his wish he says they are to have the homestead, &c., "with the total income from my estate, stocks, bonds and mortgages and notes after deducting taxes."

What did he mean by the language just quoted? One side says he meant the net income after all expenditures were paid out of the gross income; the other side says he meant gross income. Each side, however, says he meant that the taxes were to be taken out of the income—though they disagree as to what is included in the word "taxes."

The word "income," when used in respect to principal and income, is self-defining. It is that which comes in, or is derived from, the use to which the principal is put.

"Gross income" means the entire amount that the use of the principal yields. "Net income" means what is left of gross income after all expenditures on behalf of upkeep, encumbrances, &c., are deducted.

Usually where one gives the income from an estate to one for life with remainder to another, the courts have held that the intention was to keep the principal intact, and have therefore charged the income with the repairs, upkeep and current expenditures, and have apportioned other items which they have held should be mutually borne. Such a construction in such cases is based upon a finding of such an intention.

. So, that, when the terms of the will show a different or contrary intention the construction just stated does not apply. If the will gives the "gross" income, then the expenditures. which,

by the first-mentioned construction, would be taken out of income, are taken out of principal.

I gather from the briefs and the arguments of the respective counsel in the case at bar that they have no dissent from what has been above stated as the law and the principles to be applied in the proper construction of the will in hand. The difference between them is as to the proper meaning, under all the circumstances of the case and the language of the whole will, to be ascribed to the words "total income" as the testator used them. This language, in this connection, and in view of the situation existing at the time and the provisions of the whole will, I think means "all the income," and is equivalent to gross income. If it is not given this meaning, but is held to mean net income, as is contended for, then no meaning whatever is ascribed to much of the language used in the will.

At the time the will was written the testator had, as the objects of his immediate bounty, his wife and his unmarried daughters. (The sons were to take care of themselves during the widow's lifetime.)

For the widow and the unmarried daughters, he wanted them, during the widow's life and their need of a supporter, to have the home and all its accessories, and to have all the income derivable from the estate. It does not seem to me reasonable that he intended to have their means of support jeopardized and perhaps wiped out by taking from the income uncertain amounts to relieve the principal. He evidently was not so much concerned with what should eventually go to the sons and the daughters by way of principal as he was to provide a certain support for his widow and the unmarried girls who would have immediate and imperative need thereof. The fact that he provided that certain expenditures, *i. e.,* taxes, should come out of the total, whole or gross income is strongly indicative of the purpose and intention I ascribe to him. Whereas, there is no reasonable explanation of this provision if the other construction is applied and total income is read as net income.

Furthermore, the provision giving power to the executor to sell any or all the estate and invest the income or interest is an indication of the purpose and intention I ascribe to the testator :.

24

his intention being to provide for the immediate, and as he viewed it, imperative needs of those women folks, it was desirable that the estate should, as nearly as possible, be interest bearing—should be in the position where income would be fixed and unfluctuating, and where there would be a minimum, if not an entire lack of expenditures.

I therefore construe this will as giving to the widow and the unmarried daughters during the lifetime of the widow all the income from the estate after deducting therefrom the taxes levied upon the properties, real and personal, of the estate.

This naturally brings us to the consideration of the assessments for benefits for sewer improvements, in the consideration of which I think some light is also to be obtained as to the testator's intention and the proper construction of the will.

*Second.* Assessments for sewer improvements amounting to $27,259.13 were made against lands of the testator during his lifetime, the report of the commissioners of assessment having been filed in the clerk's office on February 6th, 1908. (Testator died March 4th, 1908.)

The confirmation of the court did not take place until after the testator's death. *Certiorari* proceedings resulted in the setting aside of the initial assessment and a reassessment of $6,904. The executor, who is also a remainderman, contends that the whole amount of these assessments should, under the will, be charged against the income.

Reverting for a moment to the matter of the construction of the will, it will be observed that if the testator is held to have intended and to have meant that only net income should go to the widow and unmarried daughters, there was in this one item, as it existed at the time of his death, an amount which would require almost five years of income to pay. (The income is shown to approximate $6,000 per year and the taxes $800.) So that the result of that construction would be to deprive the widow and the unmarried daughters of all means of livelihood for a period of five years. I cannot believe he had any such unreasonable and inexplicable intention.

To return now specifically to these assessments: In the first place, I hold that they are not within the term "taxes" as used

by the testator. Without attempting a definition, I think it is common use and knowledge in this country that the word "taxes" connotes the annual amounts levied upon persons or property for governmental purposes. It does not in its ordinary use relate to assessments against property made because of benefits accruing to that property by reason of public improvements, and I shall not elaborate upon what seems to me to be obvious. I also shall not consider or decide whether, under the law of this state, these assessments, in the absence of specific language otherwise controlling, should be charged against principal or income.

It is argued that since the improvement was completed, and the report of the commissioners was filed before the testator's death, the burden or charge must be met out of the estate in any event, and the fact that the confirmation of the report and the reassessment and payment did not take place until after his death is immaterial. This point was strongly pressed and authorities are cited to sustain it. *Cadmus* v. *Fagan* (*Supreme Court, 1884*), *46 N. J. Law (17 Vr.) 441;* on review (*Court of Errors and Appeals, 1885*), *47 N. J. Law (18 Vr.) 549; In re Commissioners of Elizabeth (1887), 49 N. J. Law (20 Vr.) 488; Hartshorne* v. *Cleveland* (*Supreme Court, 1890*), *52 N. J. Law (23 Vr.) 473; affirmed (Court of Errors and Appeals, 1892), 54 N. J. Law (25 Vr.) 391.* My reason for refraining from a decision upon the point is because in my view of the case it is not involved in this suit. If my construction of the will is the proper one, then this burden must not be deducted from the total income, and it is therefore immaterial whether it otherwise would fall, as between life tenant and remainderman, upon one or the other, or be apportioned.

*Third.* Next, as to Mrs. Kraft's contention, that she is entitled to share with her unmarried sister and her mother, the widow, in the income.

I cannot sustain this. She was unmarried when the will was made, but was married when the will became effective at the time of her father's death. She therefore was not an "unmarried daughter," as of the time when the will speaks.

*Fourth.* Mathilda Sophia, the daughter, and Sophia, the mother, are entitled to the income equally.

*Fifth.* Mathilda should be charged with the one-third of the household charges and expenses as shown by the account. Reasons need not be given for this finding, as it is the result of unanimous agreement made by the parties. This, of course, does not include any items which were paid solely for the mother or for the other sister, Mrs. Kraft.

*Sixth.* I do not find sufficient evidence or reason to surcharge the executor for failing to rent "the hotel property." The parties agree that it is his duty as executor to hold the estate and administer it as trustee. I do not decide that this is his duty under the will. He has undertaken it and the others have acquiesced, so that it is proper, by the reason of the circumstances, to treat him as a trustee even if it shall be held that under the will he did not become trustee after his duties as executor were completed. Treating him as trustee, therefore, his conduct must be judged in the light of what reasonably could be done with the property in order to obtain income therefrom. This hotel property is, undoubtedly, a difficult one to properly handle. I shall not go into the testimony, but will summarize my conclusions thereon by saying that it does not appear that he has so acted as to render himself liable to surcharge. He may have been so interested in selling that he was not interested enough in renting; but I cannot say that his judgment was not an honest one. He should, in my opinion, either now sell at a proper figure or get the best in the way of rent that he can obtain.

*Seventh.* The accounts filed will have to be restated, in view of these findings; and in the instructions and directions to the master all matters not herein dealt with can be determined. Any other questions which should be disposed of by the court may be brought up on settlement of orders or decrees.

The decrees and orders to be made will be settled on notice.