### FRENCH v. WOLF.
#### No. 33232.

Supreme Court of Louisiana.
March 4, 1935.

Rehearing Denied April 1, 1935.

Neil A. Armstrong, Jr., of New Orleans, for appellant.

D. T. Salsiccia, of New Orleans, for appellee.

HIGGINS, Justice.

Plaintiff sued his wife for separation from bed and board on the ground of cruel treatment. The wife reconvened for a separation on the same ground. She then filed a rule against him to show cause why she should not be allowed alimony pendente lite in the sum of $100 a month and $15 for costs of court. The husband, in his return to the rule, averred that he received a salary of $55 a week, or $2,860 a year, making a monthly average of $238.25; that his wife was not entitled to alimony, because she had an income of $92.50 per month, consisting of a check in the sum of $57.50 per month from the United States government, resulting from war risk insurance on the life of her first husband, and the sum of $35 per month, representing rent from one-half of the double cottage No. 7325 Spruce street.

The district judge awarded alimony in the sum of $15 per week, but declined to allow the $15 for costs of court.

Plaintiff appealed, and the wife has answered the appeal and asked that the award be increased to $100 per month.

With reference to the claim for $15 for costs of court, which was refused by the trial judge, the defendant neither in her answer to the appeal nor in her brief complains of this ruling, and we therefore consider that it is conceded that the trial court did not err in that respect.

In connection with his defense, the husband claimed that the wife was receiving $35 a month as rent. The wife testified that the double cottage in question was purchased by her mother in 1925 and that the title was in her name, as well as the assessments against the property, and that one-half of the building was rented at the rate of $35 per month, and that the other half was occupied by them.

The only evidence offered by the plaintiff to the contrary is his own testimony to the effect that he spent certain money for repairing and painting the building. He was cross-examined with reference to who owned the property, and testified as follows:

"Q. That is her property?

"A. That I don't know. It is in her mother's name."

The trial judge concluded that the plaintiff failed to show that the property belonged to the defendant. It is our opinion that his conclusion is correct.

■ The third point in the case is whether or not the installments of $57.50 per month, paid by the United States government to the defendant, as a result of the death of her first husband, who was covered by a policy of war risk insurance, should be taken into consideration in assessing the alimony.

Article 148 of the Civil Code reads as follows:

"If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband."

The plaintiff contends that these payments should be considered as income within the meaning of the above-quoted article, and therefore computed in fixing the amount of the alimony. The defendant argues that this money represents capital, i. e., the amount of the policy of insurance which is being paid to her in installments, and hence, under the law, is not to be considered in assessing and computing alimony.

The Century Dictionary defines the word "income" as follows:

"That which comes to a person as payment for labor or services rendered in some office, or as gains from lands, business, the investment of capital, etc.; receipts or emoluments regularly accruing."

Black's Law Dictionary defines "income" as:

"The return in money from one's business, labor, or capital invested, gains, profit, or private revenue."

Corpus Juris, vol. 31, p. 396:

"1. In General. Whatever difficulty there may be about a precise and scientific definition of 'income,' it imports something entirely distinct from the principal or the source of its derivation; and it is used in common parlance and in law in contradistinction to 'capital,' 'capital assets,' 'corpus,' 'invested capital,' 'investment,' and 'property.' Viewed from the source of its derivation, the word 'income' may be defined to be that gain or profit which accrues, is derived, is gained, or proceeds from business, capital, commerce, investments of capital, labor, lands, occupations, professions, property of any kind, or the like. * * *"

C. J. vol. 31, pp. 397, 398 (footnotes):

"The word 'income,' when used in respect to principal and income, is self-defining. It is that which comes in, or is derived from, the use to which the principal is put. Schmidt v. Schmidt, 80 N. J. Eq. 364, 368, 84 A. 629."

"The ordinary meaning attached to income, when it is not derived from personal exertion, is that it is something produced by capital without impairing that capital, and which leaves the property intact, and that nothing can be called income, for the purpose of this act, which takes away from the property itself. If it does, then it ceases to be income and amounts to a sale of capital assets. Sargent Land Co. v. Von Baumbach (D. C.) 207 F. 423, 430."

"The essential difference between capital and income is that capital is a fund; income is a flow. A fund of property existing at an instant of time is called capital. * * * Madrigal v. Rafferty, 38 Philippine, 414, 418."

There can be no doubt that the word "income" is in no way synonymous with the word "capital."

In the case of Cignoni v. Cignoni, 139 La. 978, 72 So. 707, this court said: "During her suit for separation, the wife is not bound to impinge on her capital for expenses while the husband lives out of his income. * * *"

In that case the wife had capital amounting to $741 and her husband's monthly income was $250. Alimony at the rate of $50 per month was awarded.

In the case of Newson v. Newson, 176 La. page 699, 146 So. 473, 474, there was an appeal from an award of alimony. The community of acquets and gains between the husband and wife had been settled at a fixed valuation of $4,000. The wife, plaintiff, was paid $200 cash for her $2,000 interest in the community, the balance of $1,800 was to be paid at the rate of $75 per month. The husband sought to escape the payment of alimony by contending that the $75 per month received by the wife was income. We said:

"The $75 a month which she is supposed to get, in discharge of the $1,800 due her for her one-half of the community property, is not income, but capital. * * *"

In the case of Abrams v. Rosenthal, 153 La. 459, 96 So. 32, it was held:

"Under Civ. Code, art. 148, providing that, if wife has income, earned or unearned, sufficient for maintenance in the style and under conditions which she is accustomed by reason of her husband's means and position, she is not entitled to alimony pendente lite."

In the case of Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897, the court stated

the question of law presented and decided it in the following language:

"The question is whether the sums received by the plaintiff under the will of Anthony N. Brady in 1913, 1914 and 1915, were income and taxed. The will, admitted to probate August 12, 1913, left the residue of the estate in trust to be divided into six equal parts, the income of one part to be applied so far as deemed proper by the trustees to the education and support of the testator's granddaughter, Marcia Ann Gavit, the balance to be divided into two equal parts and one of them to be paid to the testator's son-in-law, the plaintiff, in equal quarter-yearly payments during his life. But on the granddaughter's reaching the age of twenty-one or dying the fund went over, so that, the granddaughter then being six years old, it is said, the plaintiff's interest could not exceed fifteen years. The Courts below held that the payments received were property acquired by bequest, were not income and were not subject to tax. * * *

"But the distinction between the cases put of a gift from the corpus of the estate payable in instalments and the present seems to us not hard to draw, assuming that the gift supposed would not be income. This is a gift from the income of a very large fund, as income. It seems to us immaterial that the same amounts might receive a different color from their source. We are of opinion that quarterly payments, which it was hoped would last for fifteen years, from the income of an estate intended for the plaintiff's child, must be regarded as income within the meaning of the Constitution and the law."

Under the Federal Income Tax Law (Revenue Act of 1934) we find the following provisions:

"Title I—Income Tax

"Subtitle B—General Provisions

"Part II—Computation of Net Income

"Section 22. *Gross Income.*

"(b) *Exclusions from Gross Income.* The following items shall not be included in gross income and shall be exempt from taxation under this title:

"(1) *Life Insurance.* Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income). * * *" 26 USCA § 5022(b)(1).

The Louisiana Income Tax Statute, Act No. 21 of 1934, as amended by Act No. 2 of the first and Act No. 7 of the second Extra Sessions of the Legislature of 1934, reads as follows:

"Title 1—Income Tax

"Subtitle B—General Provisions

"Part II—Computation of Net Income

"Section 8. *Gross Income.*

"(b) The following items shall not be included in gross income and shall be exempt from taxation under this title:

"(1) Amounts received under life insurance policies and contracts paid by reason of the death of the insured."

It is agreed by the parties that the policy provided for payment to the beneficiary of $10,000, with 3½ per cent. interest, in monthly installments of $57.50 for 240 months, or 20 years, to September, 1938. The payments over 20 years will total $13,800. The interest amounts to $3,800, which, over a period of 240 months or 20 years, is an average of $15.80 per month.

From the foregoing authorities, it is our opinion that the $10,000 representing the face value of the policy of insurance is capital. We are also of the opinion that the $3,800 which represents interest on the principal of $10,000 is income. Consequently, the capital is not to be considered in assessing and computing the alimony, but the interest or income under the law must be taken into consideration. The monthly installment is $57.50. The interest is $15.80. The difference is $41.70. The sum of $15.80 is income and $41.70 capital.

Plaintiff admits that his salary averages $238.25 monthly. One-third of his monthly income is therefore $79.41.

The trial judge had authority to assess alimony up to one-third of the total income of the husband. He fixed the alimony at the rate of $15 per week. The income from interest on the proceeds of the insurance policy and the alimony awarded total $75.80 per month. We find nothing in the record which would justify us in either decreasing or increasing the amount of the award.

We held in the case of Shipp v. Shipp, 180 La. 881, 158 So. page 5, that, due to the fact that the trial judge, before whom the suit for divorce was pending, had control over the allowance of alimony, this court was reluctant to change the amount of the award, and would only interfere where it was

shown that the district judge acted arbitrarily. See, also, Grimes v. Posecai, 175 La. 1, 142 So. 703; Nissen v. Farquhar, 121 La. 642, 46 So. 679.

For the reasons assigned, the judgment is affirmed.