621 So.2d 120 (1993)
Paul L. MAYO, Plaintiff-Appellee,
v.
Judy B. Mayo CRAZOVICH, Defendant-Appellant.
No. 24796-CA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 1993.
*121 Travis M. Holley, Bastrop, for appellant.
Marshall Blackwell, Monroe, for appellee.
Before SEXTON, LINDSAY and BROWN, JJ.
SEXTON, Judge.
Judy B. Mayo Crazovich appeals from a judgment which decreased the child support obligation of her ex-husband, Paul L. Mayo, to $68 per month. We affirm.
Appellant, Judy B. Mayo Crazovich, and appellee, Paul L. Mayo, were married on November 24, 1972, in West Monroe, Louisiana. Two children were born of the marriage, Brittany, born November 30, 1973, and Haylea, born September 2, 1977. Following a legal separation of the parties on September 7, 1979, a judgment of divorce was rendered on October 1, 1980. This judgment awarded custody of the minor children to Judy Mayo and ordered Mr. Mayo to pay child support in the amount of $300 per month. Since the divorce, both parties have remarried.
*122 On August 22, 1983, Judy Mayo filed a rule to increase child support to $600 per month. Pursuant to a stipulation entered into between the parties, on October 6, 1983, the trial court rendered judgment ordering Mr. Mayo to pay $350 per month in child support and all reasonable medical and dental expenses incurred by the children.
On January 17, 1992, Judy Mayo Crazovich filed a rule against Mr. Mayo for contempt (alleging failure to pay child support and medical expenses), for attorney fees, for the amount of alleged past-due child support, and for an increase in child support. On May 20, 1992, Paul Mayo filed a rule to reduce child support asserting that he had suffered a severe decrease in income and that one of the children had reached the age of majority. Both rules were heard on July 20, 1992.
After hearing all of the evidence, the trial court rejected and dismissed Mrs. Crazovich's rule for an increase in child support and contempt. Applying LSA-R.S. 9:315, the trial court determined that Paul Mayo had a total income of only $301 over the past seven months. Therefore, the trial court ordered a decrease in child support to $68 per month for the one remaining minor. A final judgment was signed on August 25, 1992, and it is from this judgment that Judy Crazovich appeals, alleging several assignments of error.
Ordinarily, even a consent judgment fixing child support may not be modified absent a showing of a substantial change in circumstances to support the modification. LSA-R.S. 9:311(A); Osborne v. Osborne, 512 So.2d 645 (La.App. 2d Cir. 1987). A voluntary change of circumstances must be reasonable, justified, and in good faith without the intent to avoid the child support obligation. Goodall v. Goodall, 561 So.2d 867 (La.App. 2d Cir.1990). The trial court is granted considerable discretion in modifying a child support award and its determination will not be disturbed on review unless the record reveals a clear abuse of discretion. Culpepper v. Culpepper, 514 So.2d 701 (La.App. 2d Cir.1987).
The child support guidelines are set forth in LSA-R.S. 9:315, et seq., and are to be used in any proceeding to establish or modify child support filed after the October 1, 1989 effective date. Because the rule to decrease child support was filed on May 20, 1992, the guidelines are applicable in the instant case.
On appeal, Mrs. Crazovich contends the trial court erred in fixing the child support award at only $68 per month. She asserts the trial court failed to consider the fact that Mr. Mayo had voluntarily quit a higher paying job to go into business for himself, which substantially lowered his income. She contends that her ex-husband is simply shifting his income to a later date by creating substantial equity in his poultry business. Under LSA-R.S. 9:315.9, if a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential. Thus, appellant contends the child support award should be increased.
The evidence in this case shows that in June of 1984, Paul Mayo and a partner started their own cementing company, Mayo and White Cementing, Inc. Mr. Mayo continued working for this company until November of 1991. He expected to make over $30,000 in 1991. As evidenced by his 1991 tax return, which is filed in the record, Mr. Mayo in fact made only $15,000 that year due to financial problems that the company was experiencing. Paul Mayo testified that he decided to leave the cementing business and start his own poultry farm with the hope of earning more money. He borrowed $20,000 from the Bank of Jena to purchase land for his poultry farm. Mr. Mayo also borrowed $308,000 from Marion State Bank, which was used to build chicken houses and purchase equipment. Since he has started his business, Mr. Mayo has sold two flocks of chickens, receiving $10,028 in income, while incurring $9,795 in operating expenses, which included repayments of loans. Each time a flock of chickens is sold, $8,000 is paid directly to Marion State Bank to pay off the construction loan.
*123 It is clear from the record that Paul Mayo left his unstable cementing business in November of 1991 to enter the poultry business to improve his financial condition. Mayo and White Cementing, Inc. was experiencing financial difficulty, and it was unable to pay his expected salary. Mr. Mayo testified that he eventually expected to make a significant income from his poultry business. Appellant presented no evidence of bad faith on the part of Mr. Mayo when he changed occupations. Although he has encountered significant start-up costs, the record indicates that Paul Mayo is diligently working to make a profit in his new business and is not voluntarily underemployed.
Appellant also contends the trial court erred in reaching the conclusion that Paul Mayo had only $301 in actual income since starting his poultry business. She contends the trial court erred in calculating his income by simply deducting his business expenses from his gross receipts. She asserts that Mr. Mayo paid $20,500 to the bank for repayment of loans which were used to construct chicken houses for his poultry business. Appellant contends that nothing is mentioned about the payment of notes as being an ordinary and necessary business expense under LSA-R.S. 9:315(4)(c). Accordingly, she contends the court should exclude any business expense which is found to be inappropriate for determining gross income for calculating child support.
The child support guidelines establish the "basic child support obligation" for one or more children based on the combined "adjusted monthly gross income" of the parents. Norred v. Norred, 591 So.2d 396 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1319 (La.1992). Gross income is defined in LSA-R.S. 9:315(4), which provides in pertinent part:
(4) "Gross income" means:
. . . .
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
. . . .
The trial court referred to the above statute when determining Paul Mayo's income since he was self-employed. The trial court subtracted the operating expenses from the total earnings to calculate that Mr. Mayo had slightly over $300 in gross income since starting his poultry business. Included in the category of operating expenses were payments on the loans which Mr. Mayo had taken out to start his business. Obviously, the trial court considered these loans as ordinary and necessary expenses which were required to produce income.
We have located no jurisprudence which discusses the meaning of an ordinary and necessary expense which is required to produce an income. However, it is obvious that if there were no business loans in the instant case, Paul Mayo would have no poultry business. The record indicates that the defendant depleted his savings account and borrowed $20,000 from the Bank of Jena, with his father as surety, in order to obtain 80 acres free and clear so that the property could be mortgaged to the bank for the loan of $308,000 he obtained to begin his poultry business. In order for the bank to make the loan, the bank required that it receive payments directly from ConAgra (the chicken processing plant which contracted with Mr. Mayo) in the amount of $8,000 per flock.
Defendant testified that ConAgra projected he could raise five and one-half flocks a year, which would amount to payments of something over $40,000 on the bank loan. He has four chicken houses which cost approximately $75,000 each. He had hoped that his gross return would be $21,000 per year per house, but that sum has not materialized. Clearly, the defendant is in the early stages of a new *124 enterprise which seems to have the potential to significantly improve his financial situation. However, at this early stage, he has obviously realized little income.
Under these circumstances, we conclude that the trial court's decision to treat the payments on the loans as an ordinary and necessary business expense was not clearly wrong. Thus, the trial court correctly applied LSA-R.S. 9:315(4)(c) by subtracting ordinary and necessary expenses from gross receipts to determine that Paul Mayo had slightly over $300 in gross income since starting his poultry business.
Finally, appellant contends the trial court erred when it failed to consider the income of Mr. Mayo's present spouse when determining the proper amount of child support. She contends that if Mr. Mayo only had $300 in income over the past seven months, then obviously he was receiving significant expense-sharing benefit from his second wife's income.
LSA-R.S. 9:315(6) defines "income" to be used in the calculation of child support obligations, and it provides in pertinent part:
(6) "Income" means:
. . . .
(c) The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.
. . . .
The use of the word "may" is permissive, and, therefore, consideration of second spouse income is discretionary with the trial court. The standard of review is whether the trial court abused its discretion. Norred v. Norred, supra; Crockett v. Crockett, 575 So.2d 942 (La.App. 2d Cir. 1991).
In the instant case, Paul Mayo testified that his current wife earned a little over $20,000 per year as a school teacher. Paul Mayo also testified that since November 1991, his family had been living off of a $2,000 tax refund from the IRS, a $300 tax refund from the state, the equity that they had in their house, and his wife's salary. Considering Mr. Mayo's current financial condition, it is clear that his current wife's salary is essentially the sole financial resource of the current Mayo household. The extent to which this income reduced which actual expenses of Mr. Mayo is not disclosed by the record. We, therefore, cannot say that the trial court abused its discretion when it failed to include the income of the current Mrs. Mayo in calculating Mr. Mayo's income.
In summary, Paul Mayo filed a rule to decrease his child support payments of $350 per month because one of his daughters had reached the age of majority and also because he had suffered a significant decrease in income. After hearing the evidence, the trial court found a change of circumstances because of Mr. Mayo's decreased income and rendered judgment fixing child support at $68 per month for one child, in accordance with the guidelines. In so doing, the trial court concluded Mr. Mayo's income was significantly decreased and that he was not voluntarily underemployed. Concluding that the trial court's determinations were not clearly wrong, the judgment appealed from is affirmed at appellant's cost.
AFFIRMED.