670 So.2d 767 (1996)
Renee Soileau McDANIEL, Plaintiff-Appellant,
v.
Christopher Darren McDANIEL, Defendant-Appellee.
No. 95-1314.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
Rehearing Denied April 17, 1996.
*769 Clyde Fontenot, Kathy Fontenot Deshotel, Ville Platte, for Reneé Soileau McDaniel.
J. Jake Fontenot, Mamou, for Christopher Darren McDaniel.
Before DOUCET, C.J., and YELVERTON and SAUNDERS, JJ.
DOUCET, Chief Judge.
This is an appeal from a judgment ordering an increase in child support. The parties, Reneé Soileau McDaniel and Christopher Darren McDaniel, were divorced by a judgment of the district court on February 8, 1989. The judgment of divorce named Reneé as the custodial parent of the two minor children of the marriage and ordered Darren to pay child support. The support order was subsequently modified several times, most recently on October 1, 1991, when a stipulated judgment was rendered, ordering Darren to pay $275.00 per month, plus an additional "voluntary" payment of $75.00 per month for the younger child's nursery school tuition.
On March 31, 1995, Reneé filed a rule to increase the child support, which was heard on July 7, 1995. On July 25, 1995, the district court rendered a judgment increasing the support to $400.00 per month, plus 60% of any extraordinary medical expenses incurred on behalf of the children. Reneé has appealed, assigning numerous errors in the district court's ruling. Darren has answered the appeal, asking that the support award be reduced.
A threshold issue raised by Darren on appeal is whether Reneé satisfied her burden of establishing a change in the circumstances of the parties justifying a modification of the 1991 stipulated judgment. It is well-settled that a party seeking a modification of a child support award, including a consent decree, must establish a substantial change in the circumstances of one of the parties. La.R.S. 9:311; Kleiser v. Kleiser, 619 So.2d 178 (La.App. 3 Cir.1993); Rushing v. Rushing, 614 So.2d 268 (La.App. 3 Cir. 1993), appeal after remand, 635 So.2d 610 (La.App. 3 Cir.1994).
Reneé contends that Darren's income has substantially increased. Darren, on the other hand, argues that his current income is lower than his 1993 income of $18,658.00 and his 1992 income of $16,574.00. The resolution of this dispute lies in the classification of certain monthly payments that Darren receives from a corporation that he formed in 1994.
Darren's principal source of income is a video rental business, which he bought in 1991. He operated the business as a sole proprietorship until July 1, 1994, when he transferred all of its assets to C.D.M. Enterprises, *770 Inc., a Louisiana corporation that he exclusively owns. According to Darren's testimony, he did not fund the corporation by purchasing its stock. He simply transferred all of the assets and liabilities of his sole proprietorship to the corporation, and the corporation agreed to pay him $30,970.43 at the rate of $750.00 per month.
The trial judge concluded that these payments by the corporation cannot be considered "income" within the meaning of La.R.S. 9:315, because they reflect a return of capital, as opposed to income, which is generated by capital without impairing it. In support of that conclusion, the trial judge relied upon French v. Wolf, 181 La. 733, 160 So. 396 (1935) in which the Louisiana Supreme Court held that benefits paid under a war risk insurance policy were not income for the purposes of determining a spouse's right to alimony pendente lite. The court in Guy v. Guy, 600 So.2d 771 (La.App. 5 Cir.1992), similarly, cited French, 160 So. 396, in holding that death benefits paid under a life insurance policy were not income for the purposes of calculating child support under La.R.S. 9:315.
We fully agree with the principle underlying these decisions that funds that are generated through the depletion of capital are not income. However, what the trial judge apparently overlooked in this case is that the sale of the assets of Darren's sole proprietorship to his wholly owned corporation did not deplete his capital. While the life insurance policy in Guy obviously lost all of its intrinsic value when the death benefits were paid, the assets that Darren sold to his corporation did not similarly lose their worth. Their value is now reflected in the stock that Darren owns. As the sole shareholder, Darren has the right to dissolve the corporation, and upon doing so, all of the assets (or the funds generated by their liquidation) will be returned to him.
One need not pierce the corporate veil, as Darren suggests in his brief, in order to hold that he cannot reduce his income simply by converting his sole proprietorship to a corporation that he exclusively owns. It is clear from his testimony that he did not give up anything when he sold his personal assets to his corporation. As the sole stockholder in the corporation, he is still the recipient of all of the net income generated by the business. While the sale of the assets might permit the corporation to claim the $750.00 monthly payments as a business expense for accounting and tax purposes, the transaction has had no effect on Darren's personal financial condition or on his ability to pay child support. He still receives $750.00 per month out of the net profits of the business in addition to his monthly salary of $1,000.00.
In light of the fact that Darren remains the sole owner of the business, which is generating the monthly payments that he receives, we find that the trial judge erred in failing to classify those payments as income. For purposes of calculating his child support obligation, Darren's monthly income consists of his $1,000.00 salary, the $750.00 payment from his corporation, and an additional $175.00 in rental income. His total monthly income of $1,925.00 is roughly $544.00 per month, or 28% greater than his 1992 income. An increase of this magnitude in the income of the payor qualifies as a substantial change in the circumstances of the parties, which will support a modification of the prior consent decree.
Reneé argues that we should also classify as income monthly transportation expense reimbursements that Darren receives from his corporation. Darren testified that he uses a pickup truck that he personally owns for business purposes. He pays all of the expenses associated with operating the truck, including monthly payments on the purchase price, gasoline and maintenance expenses. The corporation reimburses him for its use of the vehicle at the rate of $.28 per mile.
La.R.S. 9:315(4)(b) includes within the definition of "gross income," expense reimbursements received by a parent in the operation of a business, "if the reimbursement payments are significant and reduce the parent's personal living expenses." While we find that payments averaging $350.00 per month are significant, there was no showing in this case that being reimbursed for expenses that *771 he has actually incurred has reduced Darren's personal living expenses.
In Widman v. Widman, 619 So.2d 632 (La.App. 3 Cir.1993), this court held under similar facts that the trial court had erred in including transportation expense reimbursements as income without an accompanying credit for the expenses actually incurred by the parent receiving the reimbursement. In this case, the trial judge apparently found that Darren's income was not increased by the reimbursements, because they were offset by his expenses. The evidence and our holding in Widman support that conclusion.
Reneé also argues that the salary earned by Darren's current wife should be added to his monthly income. At the conclusion of the hearing, the trial judge indicated that he was not inclined to consider it, because Reneé's present husband earns a comparable amount. However, in his written reasons for judgment, he cited Darren's wife's income as a change in the circumstances, which justified an increase in the award.
We believe that the trial judge's first conclusion was the correct one. La.R.S. 9:315(6)(c) permits the trial court to consider the income of another spouse "to the extent that such income is used directly to reduce the cost of a party's actual expenses." However, it is an abuse of discretion to consider the income of only one of the parties' spouses. Greene v. Greene, 93-789 (La.App. 3 Cir. 3/2/94); 634 So.2d 1286, amended, 93-789 (La.App. 3 Cir. 7/6/94), 638 So.2d 1245.
Darren testified that his wife's annual income of $17,500.00 is combined with his and used to pay community expenses. It is clear from Reneé's testimony that all of her husband's comparable salary is being used to pay their household expenses. At the time of the hearing, Reneé was a full-time college student and was earning an average of only $28.00 per month from substitute teaching. Inasmuch as the parties' spouses were earning comparable amounts, which were being used to defray the parties' expenses, it would be pointless to factor in the spouses' salaries in this case.
Darren argues that Reneé's income should nevertheless be deemed greater, because she was voluntarily underemployed within the meaning of La.R.S. 9:315.9. At the time of the hearing, Reneé was working toward obtaining a teaching certificate and expected to complete her student teaching and final course requirements within about a year. The trial judge found that Reneé was voluntarily underemployed, but he concluded that her underemployment should not be considered, because obtaining her teaching certificate would enable her to earn more money and would eventually benefit all of the parties.
It is not clear from the evidence what Reneé could have been earning, if she had not been a full-time student. She made $200.00 per month working for an attorney before quitting in 1991 to return to college and obtain a degree in elementary education. She had previously earned college credits in another field, but she apparently did not have enough for a degree, since she testified that all but about 25 of her completed hours of study are in elementary education. While enrolled in college, she has worked occasionally as a substitute teacher. She acknowledged that she could earn more by working additional days, but her full-time academic schedule will not permit it.
The jurisprudence has long recognized that under appropriate circumstances, the continuing education of a parent can be in the child's eventual best interest. See, e.g., Palacios v. Palacios, 608 So.2d 243 (La.App. 5 Cir.1992), writ denied, 613 So.2d 1000 (La. 1993); Massingill v. Massingill, 564 So.2d 770 (La.App. 2 Cir.1990); Gravel v. Gravel, 331 So.2d 580 (La.App. 3 Cir.1976). Nevertheless, in State v. Flintroy, 599 So.2d 331 (La.App. 2 Cir.1992), a mother was found to be voluntarily underemployed when she quit a clerical job paying approximately $1,000.00 per month and returned to college in order to increase her earning potential.
On the other hand, in Mayo v. Crazovich, 621 So.2d 120 (La.App. 2 Cir.1993) a father, who left a job paying $15,000.00 to start a new business that was not generating any net income, was found not to be voluntarily underemployed. In Buchert v. Buchert, 93-1819 *772 (La.App. 1 Cir. 8/26/94), 642 So.2d 300, a father who took a $700.00 per month reduction in salary to change to a more secure job with better advancement potential, was similarly found not to be voluntarily underemployed.
In this case, it appears that Reneé had a very limited earning potential before she decided to return to college. Any improvement in her income earning potential since that time is in all likelihood attributable to the fact that she has been diligent in acquiring almost enough college credits for a degree in elementary education. In light of those facts, we agree with the result reached by the trial judge but not with his reasoning.
The facts cited by the trial judge support the conclusion that Reneé is not voluntarily underemployed within the meaning of the statute. However, they do not justify a court's refusal to use the income earning potential of a party, who is truly voluntarily underemployed. La.R.S. 9:315.9 makes it mandatory to use the income earning potential of a voluntarily unemployed or underemployed party, unless he or she is physically or mentally incapacitated or is caring for a child of the parties under the age of five years.
La.R.S. 9:315.1(B) permits a deviation from the guidelines, if the court finds that the support required by them would not be in the best interest of the child or would be inequitable to the parties. However, the record must contain oral or written reasons for the deviation, which are supported by the evidence. Rushing v. Rushing, 93-1066 (La. App. 3 Cir. 4/6/94), 635 So.2d 610; Lanclos v. Lanclos, 614 So.2d 170 (La.App. 3 Cir.1993). Adequate reasons for deviating from the guidelines must include the trial court's findings as to the amount of support that would have been required under a mechanical application of the guidelines, using the income earning potential of any voluntarily underemployed party. Rushing, 635 So.2d 610.
Reneé correctly argues that the cost of health insurance for the children must be added to the basic child support obligation under La.R.S. 9:315.4. The language of the statute is mandatory. In declining to add the cost of the insurance, the trial judge reasoned that it would serve no purpose to do so, because Darren would be entitled to a credit against the award in the amount of the insurance premium.
The trial judge was correct in observing that when insurance is being provided by the parent ordered to pay support, a credit must be given in the amount of the premium. See, e.g., Greene, 634 So.2d 1286, amended, 638 So.2d 1245; Norred v. Norred, 591 So.2d 396 (La.App. 2 Cir.1991), writ denied, 592 So.2d 1319 (La.1992). However, the credit is due only when the party ordered to pay support is paying the insurance premium. In this case, Darren is not providing health insurance for the children, and he was not ordered to do so. Furthermore, even when a credit must be given, the child support obligation must be calculated first, as we did in Greene, 634 So.2d 1286, amended, 638 So.2d 1245.
In this case, Reneé testified that she could secure health insurance for the children at a cost of $150.64 per month. There was no evidence showing that health insurance could be obtained at a lesser rate. $150.64 must therefore be added to the basic child support obligation. See Joiner v. Joiner, 619 So.2d 581 (La.App. 3 Cir.), writ denied, 627 So.2d 652 (La.1993). Since Darren will not be paying the premiums, he is not entitled to a credit against his percentage share of the child support obligation.
The cost of orthodontic treatment for one of the children must also be added. La.R.S. 9:315.5 provides that "[b]y agreement of the parties or order of the court, extraordinary medical expenses incurred on behalf of the child shall be added to the basic child support obligation." (Emphasis added.) Extraordinary medical expenses are defined by La.R.S. 9:315(3) as "uninsured expenses over one hundred dollars for a single illness or condition." The list of examples in the statute includes orthodontia. Reneé and Darren testified that they have been splitting monthly payments of $125.00 for the orthodontic treatment. Since they have clearly agreed that this is an extraordinary medical expense that a provision should be made for, *773 the statute requires that it be added to the basic child support obligation.
Citing our decision in Greene, 634 So.2d 1286, amended, 638 So.2d 1245, Reneé also argues that a provision should be made for the payment of other medical expenses not covered by insurance. In Greene, the issue of medical costs and payment of insurance premiums had not been raised at the trial level. We considered it in the first instance on appeal, and pursuant to La.Code Civ.P. art. 2164, we ordered Mr. Greene to continue providing insurance and ordered the parties to share the cost of any uninsured medical expenses in proportion to their percentage shares of the gross monthly income.
Our provision in Greene for the payment of ordinary medical expenses was a deviation from the child support guidelines. By making provisions for the cost of health insurance and extraordinary medical expenses only, the child support guidelines appear to contemplate that the insurance coverage and the basic child support obligation will be sufficient to provide for the ordinary medical needs of the children. Inasmuch as the guidelines do not provide for adding the cost of ordinary medical expenses, a provision for their payment is a deviation from the guidelines, just as an allocation of the tax exemption to the non-custodial parent would be. See Greene, 634 So.2d 1286, amended, 638 So.2d 1245.
As shown by the Greene decision, courts retain the discretion to make provisions for the payment of ordinary medical expenses in appropriate cases. However, since such orders result in a deviation from the guidelines, they must be supported by the court's written or oral reasons for ruling and the evidence in the record. The circumstances that prompted our ruling in Greene are not present in this case. The basic child support obligation provided by the guidelines, together with the cost of health insurance should be sufficient for Reneé to provide for the ordinary medical needs of the children.
We have calculated Mr. McDaniel's child support obligation in light of the foregoing and conclude that the proper amount is $778.35 per month. Our calculations are reflected on the worksheet, which is attached as Appendix A. The judgment of the trial court will therefore be amended to increase the monthly child support payments from $400.00 per month to $778.35, and Reneé shall be ordered to provide health insurance for the children. The judgment will also be amended to provide that the parties shall bear the costs of any extraordinary medical expenses other than the $125.00 per month orthodontic expense, and the costs in the district court and of this appeal, in proportion to their percentage share of the income as shown on Appendix A.
AMENDED AND AFFIRMED.
*774 APPENDIX A