815 So.2d 356 (2002)
Wade T. VERGES
v.
Donna S. VERGES.
No. 2001 CA 0208.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
Rehearing Denied May 2, 2002.
*358 Michael Baham, Pat M. Franz, Metairie, for Plaintiff/Appellant, Wade T. Verges.
Clint Pierson, Jr., Mandeville, Grace Phyllis Gremillion, Covington, for Defendant/Appellee, Donna S. Verges.
Before: WHIPPLE, FOGG and GUIDRY, JJ.
WHIPPLE, Judge.
In this child support case, appellant, Wade T. Verges, challenges a judgment of the trial court awarding child support and arrearages to appellee, Donna S. Verges, for the support of their minor child, Courtney Verges.[1] For the following reasons, we amend and, as amended, affirm.

FACTS AND PROCEDURAL HISTORY
Wade Verges and Donna Verges were married on December 29, 1989. They are the natural parents of two children: Trent Verges and Courtney Verges. The parties were divorced by judgment dated June 21, 1994. As Trent has reached the age of majority, the child support judgment at issue herein relates solely to the support of Courtney, who was seven years old at the time of trial and suffers from Down's Syndrome.
Initially, an interim order of support was rendered, awarding Mrs. Verges $1,600.00 per month for the support of the two minor children. This award was based on an income and expense affidavit dated June 15, 1994 and submitted by Mr. Verges, wherein he claimed his gross monthly income was $2,170.00. Pursuant to a rule for reduction filed by Mr. Verges, the interim order of support was subsequently reduced to $1,475.00 per month.
Thereafter, on September 14, 1998, Mrs. Verges filed a rule for contempt, alleging that Mr. Verges had willfully failed to obey prior interim court orders in that he had failed to pay numerous creditors as previously ordered and had misrepresented his income to the court in the prior setting of the interim child support amount. In the rule, she requested that the interim child support award be redetermined and adjusted, retroactive to the date of the original determination, and that attorney's fees and costs be assessed against him. A hearing on the rule for contempt was held on July 1, 2, and 6, 1999. However, during a recess of the trial, the parties settled the issue of the arrearages owed through August *359 of 1999 and stipulated that this portion of the rule and the contempt charges be dismissed.[2] Thus, the sole remaining issue for trial was the determination of the amount of child support to be paid for Courtney, retroactive to September of 1999. Trial of this remaining issue was eventually reset and held on August 29, 31 and September 1, 2000. Finding that Mr. Verges had grossly misrepresented his income, and that the child support award accordingly had been miscalculated in the interim order, the trial court set aside the prior child support obligation of $1,475.00. Instead, the court rendered judgment awarding Mrs. Verges child support in the amount of $5,124.00 per month retroactive to September 1, 1999, as well as the additional arrearages owed, in the amount of $39,788.00, to be paid at a rate of $3,315.66 per month over the course of twelve months. The trial court further ordered Mr. Verges to continue to maintain health insurance on the minor child and to pay his pro-rata share of all uncovered health and dental expenses. The trial court also awarded Mr. Verges the federal tax deduction for Courtney.
Mr. Verges appeals, assigning error to the trial court's calculation of the child support award, presenting the issues to be resolved as follows:
1. Is there sufficient evidence in the record to support the trial court's determination that Mr. Verges' gross income is three times that reflected on his tax returns?
2. Did the trial court err in finding that Mrs. Verges' gross income was $2000.00 per month-substantially less than reflected on her tax returns and paycheck stubs in evidence?
3. In a case involving a combined monthly gross income greater than the highest amount on the child support schedule, did the trial court err in simply multiplying the highest support amount by the ratio by which the combined income exceeded $10,000.00?
4. Did the trial court err in failing to include health insurance premiums paid by Mr. Verges in the support computation?
5. Did the trial court err in awarding M[r]s. Verges payment for a child care expense she was not incurring; and further, in awarding retroactive reimbursement for an expense she had not incurred?
6. What is the correct amount of child support, determined in accordance with the guidelines and supported by the evidence in the record?
Mrs. Verges, in turn, answered the appeal and likewise challenges the trial court's calculation of the child support award, contending that it should be increased, as follows:
1. The father's income as computed by [the trial court] was admittedly not a complete account of all of his income, and thus the amount of support awarded for the support of the minor child was in error.
2. Computing the award by simply multiplying the maximum award provided in the table by a factor that the father's income exceeds the upper limit of the table is erroneous.
3. The amount allotted to pay for the caregiver, Ms. Kelley, is in error.

DISCUSSION

MR. VERGES' GROSS INCOME

(Appellant's and Appellee's Assignment of Error No. 1)
In these assignments, Mr. Verges contends that the $30,000.00 figure utilized *360 by the trial court as his monthly income in computing the support award is "totally unsupported" by the evidence, and Mrs. Verges counters that Mr. Verges' income is more than $30,000.00 per month.
As reflected in the trial court's reasons for judgment, after considering the parties' testimony and evidence, the trial court concluded that Mr. Verges had not been "forthcoming" about his income. In its reasons for judgment, the trial court set forth at length Mr. Verges' financial dealings and discussed in detail how it arrived at the figure of $30,000.00 as Mr. Verges' monthly income, noting as follows:
Many exhibits were entered into the record and testimony was heard, both revealing that Mr. Verges is a shrewd businessman. Initially he had placed the family dwelling on Beau Chene Drive in Dr. Lea's name, so that Mrs. Verges and the two children were evicted. Almost all of his real estate holdings were also in Dr. Lea's name, but the testimony and exhibits revealed that Mr. Verges was a full partner in ownership and management. After Mr. Verges and Dr. Lea separated their partnership by "Consent Judgment" in Orleans Parish in November 1997, the Beau Chene property was deeded to Mr. Verges as well as certain apartment houses and office buildings. The Beau Chene property remains in his name, but the rents go to an LLC totally owned by Mr. Verges' third wife as "management fees." Other holdings which were settled in the Dr. Lea case have ended in other LLC's owned by the third Mrs. Verges. This convoluted financial picture was not assisted by Mr. Verges' CPA, Mr. Aucoin, who admitted that he asked no questions even when "red flags" presented themselves on the declarations. Mr. Aucoin merely accepted numbers provided by the office manager on a diskette and made out the tax returns. Even when "Other Expenses" listed under "Repairs and Maintenance" totalled [sic] ½ the total amount of repairs, or $180,000.00, he failed to question what those repairs could be. Nor did he question those items listed under "Repairs and Maintenance" which look on their face to be capital improvements to property.
Mr. Verges is obviously paying the minimum taxes required, as do most people. However, some items allowed on tax returns are not included as deductions when computing child support. For example, depreciation of real estate is not an allowable deduction, nor is interest and penalties for late filing. His real estate may show a loss for the I.R.S., but Mr. Verges is much too good a businessman to stay in businesses where he is truly taking a loss. Also, he obviously has at least one automobile provided through the businesses. Mr. Verges testified at length about his income, which was acknowledged at this hearing to be considerably more than at the last hearing. At times Mr. Verges' answers were evasive and less than forthcoming. His overall testimony was found by this Court not to be credible. On the other hand, Mrs. Verges was found to be a very credible witness.
It was difficult to calculate a monthly income for Mr. Verges, based on his 1999 tax return, but from a gross rental income of $466,467, and the quite low categories of "Interest and Dividends" of $751 and "Capital Gains" of $4,654, this Court believes that an income of $30,000.00 per month is not at all unreasonable. That is not even including shared expenses with his third wife in her separately owned Lakeshore Drive home.

*361 Therefore, the attached calculation has been computed, based on Mr. Verges' income of $30,000.00 and Mrs. Verges' income of $2,000. (Emphasis added).
After careful review, we find no error by the trial court in its factual finding that Mr. Verges had not accurately stated his true income, or in its determination that his income was at least $30,000.00 per month.
At the outset, we note that this matter was tried over a 6-day period, during which the majority of the trial focused on Mr. Verges' financial dealings, and his conducting of business in the names of other entities, including partnerships, businesses, and individuals (including his present wife). After hearing extensive testimony on the issue of Mr. Verges' income, the trial court correctly recognized he had not been candid with the court previously, and that his income was substantially more than previously disclosed in his affidavit and supporting documents.
Mr. Verges' certified public accountant, Albert J. Aucoin, Jr., who prepared Mr. Verges' personal and business tax returns, testified at the hearing. Mr. Aucoin readily conceded that in preparing the tax returns for Mr. Verges, he relied primarily on data given to him by Mr. Verges through his office manager, Joan Wilkinson. Mr. Aucoin and Mrs. Wilkinson testified as to the various entities owned by Mr. Verges or maintained by him through various businesses, including his construction company, and rental properties, consisting of office buildings, apartment complexes, shopping centers, and private homes. Mr. Aucoin testified that in preparing the returns, he basically took information provided to him on diskette by Mrs. Wilkinson, such as balance sheets, general ledgers, and profit and loss statements, and essentially printed a hard copy incorporating the supplied data as Mr. Verges' tax returns. Mr. Aucoin admitted that he did not prepare or review the information and figures given to him by Mr. Verges. Noting that Mr. Verges' business and personal tax returns showed an adjusted gross income of $122,545.00 for 1999 (approximately $10,212.00 per month), Mr. Aucoin explained that this figure consisted of an accumulation of income from various flow-through entities represented to him by Mr. Verges as being owned by Mr. Verges personally, plus any amounts earned by Mr. Verges as interest or dividends and capital gain income.
In determining the true nature of Mr. Verges' finances, the amount of income actually earned by Mr. Verges, both personally and through various businesses owned by him, and the degree of ownership actually held by him in several income-producing businesses, the trial court obviously relied upon the testimony of Dwayne Harper, vice-president of commercial lending at Cottonport Bank, who was called to testify. Mr. Harper testified that he had been asked to prepare a loan commitment letter with a contingency in the amount of $450,000.00. Prior to preparing the letter, Mr. Harper discussed Mr. Verges' financial condition with him and reviewed several financial statements prepared and submitted by Mr. Verges setting forth his income and financial resources. Mr. Harper stated that in exchange for issuing the commitment letter, Mr. Verges was required to personally guarantee the loan using as collateral Grace Tama Development Company, LLC, ("Grace Tama"), one of the limited liability corporations owned by Mr. Verges. According to the record, Grace Tama owned the 6800 Plaza Drive office building, 48 Pontchartrain Drive apartments, and 701 Florida Street properties. He noted that the commitment letter was issued in connection with a purchase agreement dated *362 June 11, 1998, wherein Mr. Verges was attempting to acquire a former hospital building. According to Mr. Harper, Mr. Verges indicated to the bank that the net cash flow from these properties alone was $30,000.00 per month. Mr. Harper testified that the bank accepted this figure, which it took into consideration in determining whether or not to extend the requested credit to Mr. Verges. Mr. Harper further testified that in obtaining the financing, Mr. Verges had clearly indicated that these properties produced a significant cash flow for Mr. Verges. He further stated that he would not have put the bank's money at risk had he not believed that the figures provided by Mr. Verges were accurate and that the cash flow outlined by Mr. Verges existed and was available to repay the loan.
The pertinent testimony of Mr. Harper was as follows:
Q. Mr. Harper, were you involved in the credit decisions with regard to this commitment issued to Grace Tama?
A. I presented the loans.
Q. To the board?
A. Yes.
Q. The property it was buying was vacant; isn't that correct?
A. Yes.
Q. So the property it was buying, did the bank consider that sufficient income to pay back a $450,000 loan?
A. No.
Q. The repayment of the loan, then, I'll ask you, was it dependent upon the other properties listed in the collateral, namely Plaza Drive and the Pontchartrain Drive Apartments? Was that the source of repayment that the bank was dependent upon?
A. Yes.
Q. Did you think, did you have any conversations with Mr. Verges about whether or not those properties made money?
A. He indicated that there was sufficient cash flow, significant cash flow, I should say.
Q. Did he ever indicate to you how much?
A. Maybe somewhere in the range of [$]30,000 a month, or something like that.
Q. Net?
A. I'm not sure if it was net. I don't know for sure.
Q. Was [$]30,000 a month the number that the bank was taking into consideration in considering whether to extend his credit?
A. Yes. The income from the building, yes. That's what we were going to get.
Q. If that was a gross number, Mr. Harper, that really wouldn't do the bank any good because he may gross [$]30,000. If it is spending 40, you wouldn't have made the loan would you?
A. No.
Nonetheless, Grace Tama's tax return for the next year, prepared for Mr. Verges and introduced into evidence showed its total income as a loss of $6,080.00. Thus, after considering all of the testimony and documentary evidence, the trial court rejected Mr. Verges' income tax returns as not setting forth his true income, and found that many of the expenses reflected therein were inaccurate or inapplicable for purposes of determining his obligation to pay child support.
It is well settled in Louisiana that it is within the trial court's discretion to determine what is an inappropriate expense when determining gross income for purposes of calculating child support. State in the Interest of Penn v. Penn, 97-1269, p. 3 (La.App. 1st Cir.5/15/98), 712 *363 So.2d 625, 627. Further, one cannot avoid all or part of his child support obligation by exercising exclusive control over a corporation wholly owned by him in order to limit his own salary. Hudnall v. Hudnall, XXXX-XXXX, p. 5 (La.App. 1st Cir.5/11/01), 808 So.2d 641, 644-45.
As the trial court so eloquently stated in Hudnall:
Parents are obligated to contribute to the support of their children and they must contribute in light of the child's needs as well as the circumstances of the parents. Child support is a primary obligation. Therefore, the Court will not allow a person to shield their income in order to diminish their liability owed to a child. It is the parties [sic] obligation to be honest and forthcoming regarding the establishment of his or her legitimate income and any diminutions to that income.
Hudnall, XXXX-XXXX at p. 5, 808 So.2d at 644-45.
Because the evidence showed, and the trial court found, that Mr. Verges' tax returns were erroneous and self-serving, in that the income shown was based on recapitulated figures and amounts submitted by Mr. Verges (or his office manager) to his accountant who accepted them without question, and was at odds with the other testimony and evidence elicited, the trial court correctly rejected Mr. Verges' contention that these accurately set forth his available income. Here, the trial court rejected Mr. Verges' testimony and concluded he had failed to disclose the true nature of his income. In doing so, the trial court obviously accepted the testimony of Mr. Verges' witness, Dwayne Harper, the vice-president of commercial lending at Cottonport Bank, and other documents and testimony introduced at trial, and rejected Mr. Verges' testimony concerning the figures shown on his tax returns. The trial court then concluded that, based on his true ownership interest in these properties alone, Mr. Verges had undisclosed income of at least $30,000.00 per month. On review, we find no error in these factual findings and conclusions.
Generally, the trial court's order of child support is entitled to great weight and will not be disturbed on appeal absent clear abuse of discretion. Campbell v. Campbell, 95-1711, p. 4 (La.App. 1st Cir.10/10/96), 682 So.2d 312, 316. Applying the above legal precepts, and after a thorough review of the record, we find no basis to disturb the trial court's underlying factual determinations; nor do we find any error in its calculation of the child support award based upon a figure of $30,000.00 per month as Mr. Verges' monthly income. As the trier of fact, the court was empowered to accept or reject, in whole or in part, the testimony of any witness deemed lacking in credibility. Thus, this assignment of error lacks merit.
Addressing Mrs. Verges' claim that Mr. Verges' income is greater than $30,000.00, we likewise find no basis on the record to disturb the trial court's finding as to his income. However, we note that if Mrs. Verges otherwise establishes that Mr. Verges has a greater level of income based on his disputed ownership of other business interests, including those involved in the claim for partition, the award of child support is always subject to review and increase.[3]

*364 COMPUTATION OF AWARD IN EXCESS OF STATUTORY GUIDELINES

(Appellant's Assignment of Error No. 3; Appellee's Assignment of Error No. 2)
Both parties acknowledge that their combined income exceeds the highest amount provided for in the statutory guidelines. This court has routinely held that when the combined adjusted gross income of the parties exceeds the highest level specified in the Schedule of Basic Child Support Obligations, LSA-R.S. 9:315.14, the trial court shall use its discretion in setting the amount of the basic child support obligation. See Colvin v. Colvin, 94-2143, pp. 4-5 (La.App. 1st Cir.10/6/95), 671 So.2d 444, 445-446, writ denied, 95-2653 (La.1/5/96), 667 So.2d 522. The obligation, in circumstances such as these, cannot be lower than the highest amount found in the schedule. LSA-R.S. 9:315.10(B). The highest combined adjusted monthly income in the schedule is $10,000.00 and the highest corresponding obligation for one child is $1,059.00.
Under the clear provisions of LSA-R.S. 9:315.10(B), the trial court has discretion is setting the amount of the basic child support obligation when the combined adjusted monthly gross income of the parties exceeds the highest figure provided in the schedule, and its judgment in such matters will not be disturbed in the absence of a showing of an abuse of that discretion. Aguilar v. Wilson, 613 So.2d 228, 229 (La. App. 1st Cir.1992), writ denied, 614 So.2d 66 (La.1993). Moreover, when the court deviates from the guidelines, it is required to give oral or written reasons for the deviation. LSA-R.S. 9:315.1(B).
This court has held that in cases where the parties have a combined adjusted gross monthly income in excess of $10,000.00 and the court must use its discretion when setting the basic child support obligation, oral or written reasons are required under LSA-R.S. 9:315.1(B). Colvin, 94-2143 at p. 4, 671 So.2d at 446.
Understood in the application of discretion is the realization that there is no universal mathematical formula that can be applied. In arriving at an award, the totality of relevant circumstances must be considered. As each case turns on the unique facts presented, the trial court's reasons for its decision are necessary and helpful to the reviewing court. Colvin, 94-2143 at p. 4, 671 So.2d at 446; see also Serrate v. Serrate, 96-1545, p. 7 (La.App. 1st Cir.12/20/96), 684 So.2d 1128, 1133.
In these assignments, the parties contend that the trial court erred in calculating the support award. According to the parties, the court multiplied the highest amount in the statutory guidelines for one child ($1,059.00) by a factor of 3.2 (derived from the parties' combined gross income of $32,000.00) to attain a basic child support obligation of $3,389.00, then added extraordinary medical expenses, extraordinary expenses, and optional expenses to arrive at the total child support obligation. The trial court provided both oral and written reasons for judgment, which clearly show that in arriving at the award, the court considered the totality of the circumstances herein. Specifically, the court noted that "Courtney is a Down's Syndrome child with serious heart problems." Further, the court reasoned that Courtney requires "full-time custodial care during the times she is not supervised by her mother;" enrollment in "gymnastics to improve [Courtney's] muscle tone;" "swimming lessons to improve her coordination;" and "equine therapy and music therapy." *365 Also, the trial court notably did not find Mrs. Verges' present lifestyle to be "extravagant," while it found that "Mr. Verges is well able to afford the custodial/educational care afforded to his daughter."
While Mrs. Verges submits that "the circumstances of this case dictate that child support should be computed to be more than a mere extrapolation of that due by a person whose income was $10,000.00 per month," we note that this court has never mandated that any particular method of calculating support be employed when the combined gross income is in excess of the child support guidelines. Instead, the primary concern has always been simply that the best interest of the child be the overriding consideration in exercising discretion to determine a child support obligation. See Finn v. Jackowski, 99-2808, pp. 6-7 (La.App. 1st Cir.12/22/00), 779 So.2d 917, 921-922.
Considering the record and the trial court's stated reasons herein, we conclude that the trial court correctly considered all of the factors relevant to Courtney's best interest, as well as those relevant to the income and expenses of the parties. Thus, we find no abuse of discretion in the method employed by the court herein to arrive at the basic child support obligation due.
This assignment likewise lacks merit.

MRS. VERGES' INCOME

(Appellant's Assignment of Error No. 2)
In this assignment, Mr. Verges contends that the trial court erred in using $2,000.00 as Mrs. Verges' monthly gross income figure. He argues that Mrs. Verges' tax returns and other documentation show that her monthly income is in excess of $2,000.00 per month, and that the trial court erred in failing to so find.
Mrs. Verges testified that she is employed by WWL Television in New Orleans, selling advertising and marketing. She further testified that because her salary is based on straight commission, her income fluctuates and can be as low as $700.00 per month but usually averages approximately $1,400.00 per month. When Mrs. Verges was on "guarantee," she made $2,000.00 per month. The trial court expressly found Mrs. Verges to be "a very credible witness."
Mr. Verges contends the trial court erred in calculating her monthly income, citing Mrs. Verges' individual tax return for 1999 introduced into evidence. We note that contrary to appellant's erroneous claim in brief that the return shows Mrs. Verges' adjusted gross income as $32,349.00, her adjusted gross income is actually shown as $30,592.00. Further, the return shows that Mrs. Verges' total tax liability was $3,966.00 for 1999, and that she had only paid $2,903.00, leaving a tax liability balance of $1,063.00. After deducting this amount, the return shows Mrs. Verges' total adjusted gross income as $29,529.00, which averages to $2,460.00 in monthly gross income. Also, Mrs. Verges' pay stubs dated July of 2000 and introduced into evidence similarly show a monthly income average of approximately $2,413.00. Mr. Verges argues that in computing the support award, the trial court erroneously utilized $2,000.00 as the amount of Mrs. Verges' gross monthly income and that the support award in her favor should be reduced accordingly.
As set forth above, the trial court's determination is entitled to great weight. Considering the trial court's wide discretion in setting awards when the combined income of the parties exceeds the statutory guidelines, and the testimony establishing that Mrs. Verges' income is subject to fluctuation based on the amount of earned *366 commission, we find no error. Here, we find the trial court's use of $2,000.00 per month as an indication of her average income is legally justified, as the evidence shows her income is between $1,400.00 and $2,400.00. Furthermore, even allotting Mrs. Verges the higher income of $2,400.00 per month as Mr. Verges suggests, we deem the difference of $400.00 so inconsequential, given the disparity between the parties' income herein, that it cannot be deemed an abuse of the trial court's discretion in making such determination. As noted above, the trial court found that Mr. Verges' monthly income was at least $30,000.00 without "even including shared expenses with his third wife in her separately owned Lakeshore Drive home." Accordingly, we decline to disturb the trial court's award. See Campbell, 95-1711 at p. 4, 682 So.2d at 316; see also Serrate, 96-1545 at p. 7, 684 So.2d at 1133.
These assignments likewise lack merit.

INCLUSION OF CARETAKER'S SALARY

(Appellant's Assignment No. 5; Appellee's Assignment No. 3)
In making its calculations, the trial court included the salary of Mrs. Beulah Kelley, a paid caretaker, in the amount of $1,727.00, as an "extraordinary expense" to be considered in calculating the child support award. On appeal, Mr. Verges assigns this as error, claiming that an award of child support cannot encompass anticipated future expenses that were furnished for free at the time of trial. He additionally complains that the trial court erred in including this salary as an actual expense retroactively to September 1, 1999.
The record reflects that at the time of trial, Mrs. Kelley was employed as a direct support professional for the St. Tammany Association for Retarded Citizens ("STARC"). Her job entails implementing the goals and objectives of the written complete plan of care ("CPOC") for Courtney as comprised by parents, social workers and psychologists. Mrs. Verges initially qualified for assistance for Courtney through the "waiver program" as Courtney was diagnosed with Down's Syndrome, with attendant mental retardation. As a direct support professional, Mrs. Kelley became involved in taking care of Courtney two and one-half years prior to the date of the hearing. Mrs. Kelley testified that she works with Courtney Monday through Friday and sometimes on Saturday, working up to fifty-three hours per week. As of trial, Mrs. Kelley was being paid by STARC with state funds, as the state administers the waiver program, and her wages varied according to the number of hours worked per week. As a support professional, Mrs. Kelley assumed responsibility for teaching Courtney social skills, communication, self-help skills, and health and safety goals.
Despite their disagreement on most issues, the parties do not seriously dispute that Mrs. Kelley's services are valuable. Clearly, these services are valuable and necessary for Courtney's health and well-being. Indeed, after hearing all of the evidence, the trial court found:
Courtney has had full-time custodial care during the times she is not supervised by her mother, financed by STARC. That care has been provided by Mrs. Beulah Keller, (sic) who works up to fifty-three hours per week with Courtney and with other handicapped children. Courtney has thrived under her direction. Mrs. Keller (sic) has a degree in early childhood education, and she is fully equipped to maximize Courtney's *367 potential in learning. It is essential that Courtney continue to receive care from Mrs. Keller, (sic) for she has invested love and trust in her custodian.
Mrs. Verges testified that based on the interim child support order, through which she was to receive $1,475.00 per month in child support, Courtney was deemed eligible by STARC, for purposes of the waiver program, based upon the child support amount being treated as income to the child. Mrs. Verges testified that if she received more than $1,500.00 monthly in child support for Courtney's needs, Courtney would become ineligible for services through the waiver program, inasmuch as children who receive over $1,500.00 income per month are not eligible for the program. Thus, she contended that Mrs. Kelley's salary should be included as an "extraordinary" expense in calculating the child's needs; the trial court agreed and included this amount.
Mr. Verges contends that Mrs. Kelley's wages should not be included in calculating the child support award, unless and until this expense is incurred, i.e., only when Courtney is deemed ineligible for assistance through the STARC waiver program by virtue of an increased child support award. However, Mrs. Verges testified that upon losing eligibility for benefits through STARC, she intended to hire and pay Mrs. Kelley, who had expressed a commitment to continue to be a part of Courtney's life.
Accepting her testimony as to the eligibility requirements of the waiver program as true, the trial court included Mrs. Kelley's salary in calculating the child support award, deeming it a necessary "extraordinary expense" for which Mrs. Verges would be responsible. Inasmuch as the loss of eligibility seemingly would occur simultaneously with the rendition of the judgment awarding the increased amount of child support, in the interest of judicial economy, and considering the particular circumstances of this case, including the special needs of this child, we find no error in the trial court's inclusion of Mrs. Kelley's income in computing the child support award as a documented expense, which will be actually incurred. Thus, we find no error in the inclusion of this reasonable and necessary expense. However, we agree with appellant that it was error for the trial court to include this amount as an incurred expense when computing the amount of child support owed retroactively from September 21, 2000, the date of the trial court's judgment herein, to September 1, 1999, and the total arrearages based thereon, absent any proof that Courtney's benefits through STARC had been terminated as of that date or that Mrs. Verges had paid or otherwise become liable for this expense as of that date.
Accordingly, we deem it necessary to amend this portion of the judgment by (1) recalculating the amount of monthly child support due from September 1, 1999 through September 21, 2000, omitting Mrs. Kelley's monthly salary expense in the amount of $1,727.00 as an "extraordinary expense;" and then (2) recalculating the total arrearages attributable to this period.[4]
Utilizing the same figures that the trial court did in its worksheet, but omitting Mrs. Kelley's monthly salary in the amount of $1,727.00, the monthly child *368 support award owed by Mr. Verges for the months of September 1, 1999 through September 21, 2000 is $3,500.00. Accordingly, the total arrearage awarded by the trial court in the amount of $39,788.00 is reduced by $21,112.00[5] to the amount of $18,676.00. Any credit due Mr. Verges for this adjustment shall be applied by prorata reduction of his monthly child support obligation over the next twelve months.

MR. VERGES' HEALTH INSURANCE PREMIUM

(Appellant's Assignment of Error No. 4)
Mr. Verges asserts that the trial court erred by failing to include in its calculations the amount of Courtney's monthly health insurance premium that the court ordered Mr. Verges to pay. In support, Mr. Verges cites a third circuit case, McDaniel v. McDaniel, 95-1314 (La. App. 3rd Cir.3/6/96), 670 So.2d 767. However, in McDaniel, the health insurance premium was added to the basic child support obligation because the domiciliary parent was the parent providing the health insurance coverage and paying the accompanying premium. Thus, the non-domiciliary parent was not entitled to a credit against his percentage share of the child support obligation as he was not paying the health insurance premium.
Louisiana Revised Statutes 9:315.4 provides in part that "the cost of health insurance premiums incurred on behalf of the child shall be added to the basic child support obligation" calculated under LSA-R.S. 9:315.14. Louisiana Revised Statutes 9:315.8(D) allows a deduction by the non-domiciliary parent for any direct payments made for various expenses, including health insurance premiums. The object of the statutory scheme is to eliminate the risk of double payment by the non-domiciliary parent: one payment for the premium made to the domiciliary parent in the court-ordered child support and a second, for the same premium, to the insurer. Caro v. Caro, 95-0173, p. 6 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 520.
In its reasons for judgment, the trial court stated:
Courtney is a Down's Syndrome child with serious heart problems. She has had several surgeries and faces a possible valve replacement in the future. The father's medical insurance has been excellent in its coverage, and the parties have agreed that this insurance shall remain in place and under no circumstances shall be changed.
* * * * *
The medical insurance shall be maintained by Mr. Verges with all uncovered medical expenses to be paid 93% by the father and 7% by the mother.
Further, the trial court judgment specifically stated:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Wade T. Verges will continue to maintain health insurance coverage on the minor child, Courtney Verges.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Wade T. Verges will pay his pro-rata share of 93% of all uncovered medical and dental expenses on the minor child, Courtney Verges.
*369 We find the facts herein differ from the facts of the case cited by Mr. Verges. Here, the trial court ordered the premium to be paid separately, and did not add it to the basic monthly child support obligation calculated under the child support tables. By not adding the premium to the basic obligation the trial court ordered Mr. Verges to pay to Mrs. Verges, the court effectively gave Mr. Verges the credit provided for by LSA-R.S. 9:315.8. See Caro, 95-0173 at pp. 6-7, 671 So.2d at 520.
Thus, we find no merit to this assignment.

CHALLENGES TO THE REASONABLENESS OF THE CHILD SUPPORT AMOUNT AWARDED

(Appellant's Assignment of Error No. 6)
In this assignment, Mr. Verges contends that the trial court has unjustifiably increased Mr. Verges' share of the support obligation and improperly reduced Mrs. Verges' share. Asserting that Louisiana's child support guidelines utilize the "income shares model" to fix support, and that this approach is based on the tenet that a child should receive the same proportion of income as if the parents lived together, he contends the support computations are flawed, considering the child's claimed needs and their respective lifestyles. The evidence shows, and the trial court found, that Mr. Verges had not been "forthcoming" in providing the trial court with the necessary information to precisely determine his actual income. The trial court correctly recognized that Mr. Verges' personal tax returns do not accurately reflect the amount of income available at his disposal to support Courtney, given the numerous benefits he personally enjoys through his various business interests and entities, and the various amenities expensed through his businesses.
After a thorough review of this extensive record, including the testimony and documentary evidence submitted herein, we find the trial court's award is amply supported by the record and fully warranted under the facts presented herein.
This assignment also lacks merit.

CONCLUSION
Based on the above and foregoing reasons, the September 21, 2000 judgment of the trial court is affirmed in all respects, except for the provision establishing the monthly child support obligation for the period of September 1, 1999 through September 21, 2000, and the arrearages based thereon.
The portion of the judgment in favor of Mrs. Verges and against Mr. Verges awarding her child support in the amount of $5,124.00 is herein amended to provide that the monthly child support obligation for the months of September 1, 1999 through September 21, 2000, should be $3,500.00; and the total arrearage awarded by the trial court for this period is hereby reduced to the amount of $18,676.00. The judgment is further amended to provide that any credit due Mr. Verges for this adjustment of his monthly child support obligation should be applied by pro rata reduction of his monthly child support obligation over the next 12 months.
In all other respects, the judgment is affirmed. Costs of this appeal are assessed to appellant, Wade T. Verges.
AMENDED, AND AS AMENDED, AFFIRMED.
GUIDRY, J., concurs.
NOTES
[1] In a companion case to this appeal also rendered on this date, Mr. Verges separately appealed another judgment of the trial court ordering him to arrange to have the child support payments directly deposited into Mrs. Verges' bank account each month. Finding no error by the trial court, we affirmed. See Verges v. Verges, XXXX-XXXX (La.App. 1st Cir. 3/28/02), 814 So.2d 53.
[2] By agreement of the parties, Mr. Verges consented to pay Mrs. Verges $170,000.00 representing full and final settlement of any claim for child support through August, 1999.
[3] For brevity, we decline to set forth herein the various other internal inconsistencies presented in the testimony and trial documents relied upon by appellant. Similarly, we pretermit further discussion of the documents and other testimony establishing his true income, as we find the trial court's determination on these bases alone was legally correct and is factually supported by the record.
[4] Mr. Verges filed a "Motion for Devolutive Appeal," on October 4, 2000. As an appeal from any judgment awarding support of a person does not suspend the execution of the judgment, it is apparent from the record that Courtney would become ineligible for the waiver program through STARC as of the date of any increase in the child support award. See La. C.C.P. art. 3943.
[5] The amount of $21,112.00 was derived by obtaining the difference between the monthly child support award inclusive of Mrs. Kelley's salary ($5,124.00) and the award exclusive of Mrs. Kelley's salary ($3,500.00), and then multiplying that amount ($1,624) by thirteen, representing the months in which the expense is disallowed herein.